Carlyle (Cary) W. Hall III (#026958)
Wesley D. Ray (#026351)
**POLSINELLI P.C.**
One E. Washington, Suite 1200
Phoenix, AZ 85004
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-Mail: chall@polsinelli.com
E-Mail: wray@polsinelli.com

Ryan D. Lapidus (CA Bar #196838) (Admitted Pro Hac Vice)
Daniel C. Lapidus (CA Bar #227170) (Admitted Pro Hac Vice)
Jim D. Bauch (CA Bar #199454) (Admitted Pro Hac Vice)
**LAPIDUS & LAPIDUS, P.L.C.**
177 South Beverly Drive
Beverly Hills, CA 90212
E-Mail: ryan@lapiduslaw.com
E-Mail: dan@lapiduslaw.com
E-Mail: jim@lapiduslaw.com

Attorneys for Creditors
Axiom Foods, Inc. and Growing Naturals, LLC

**IN THE UNITED STATES BANKRUPTCY COURT**

**THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In Re:<br><br>ROBERT BRANSKY, and<br>JODI L. BRANSKY<br><br>     Debtors.<br>Joint Administration pending with:<br><br>J.R. WILLIAMS, L.L.C.,<br>an Arizona Limited Liability Company,<br><br>This pleading applies to:<br><br>☒ All Debtors<br>☐ Specific Debtors | Chapter 11 Proceedings<br><br>Case No.: 4:15-bk-05735-SHG<br><br>Joint Administration with<br>Case No.: 4-15-bk-05736-BMW<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO MODIFY THE AUTOMATIC STAY TO PERMIT CONTINUATION OF PENDING CIVIL CASE**<br><br>Date of Hearing: September 17, 2015<br>Time of Hearing: 10:30 a.m.<br>Location:         Courtroom 329<br>                         38 S. Scott Avenue<br>                         Tucson, AZ |

1    **I.**     <u>**INTRODUCTION**</u>

2         Debtors' Objection to the Motion to Modify the Stay To Permit Continuation of Pending

3 Civil Case by Axiom Foods, Inc. and Growing Naturals, LLC fails for numerous reasons.

4 Primarily, the Objection fails to provide any substantive reason why the underlying California civil

5 action, Los Angeles County Superior Court Case No. BC544613 (the "LA Action") should not be

6 allowed to proceed. Instead, Debtors devote much of their argument to contesting the factual

7 background and basis of Creditors' claims, seeking to litigate, and in some cases relitigate, the

8 merits of the LA Action. Debtors attempt to characterize the entire LA Action as frivolous and

9 meritless, while at the same time arguing that the matter has driven Debtors into bankruptcy. These

10 two positions clearly contradict one another – if the LA Action was truly as meritless as Debtors

11 claim, Debtors should have been able to have the matter dismissed. In fact, Debtors have not even

12 attempted to bring a motion attacking the legal or factual merits of the claims.

13         Time after time, Debtors' Objection misleads this Court, as to both the merits of Creditors'

14 claims and as to the procedural history of the LA Action. Debtors spin a tale of woe, claiming that

15 the LA Action "spiraled out of control before there was any opportunity to address fundamental

16 issues in the case regarding the jurisdiction of the California Courts." Debtors neglect to mention

17 that J.R. Williams, LLC brought a motion in the LA Action to quash based on lack of personal

18 jurisdiction and <u>lost</u>, while Robert Bransky <u>did not even contest the issue</u>. Decl. of Jim Bauch

19 ("Bauch Decl."), ¶ 2, 21, Exh. A, R. Debtors also allege that Creditors engaged in abuses of

20 discovery, when in fact Debtors did not bring a single motion for a protective order – or even

21 initiate a meet and confer process for such a motion – to address these mythical abuses. Bauch

22 Decl., ¶ 3.

23         But this Court need not resolve these issues to rule on this motion. It is sufficient for

24 purposes of this motion that Creditors have shown that there is a real dispute between these parties,

25 and that the Los Angeles County Superior Court, and the judge assigned to the LA Action, is

26 already familiar with these issues and has, in some instances, ruled upon them. Debtors provide no

27 reason why the Los Angeles County Superior Court is insufficient or inadequate to hear these

28

factual issues, or why they should be heard before the Arizona Bankruptcy Courts instead.[1]  When this Court applies the legal standards for a motion for relief from stay to the actual facts, and not Debtors' alternate reality, the result is clear:  the Motion should be granted.

## II.    FACTUAL BACKGROUND

As Debtors themselves admit in their Opposition, an extensive amount of discovery has been conducted to date in the LA Action, which has provided Creditors with substantial evidentiary support for their claims, and refutes many of Debtors' "facts."

By Branksy's own admission, in 2007 he began developing a formula that he would later use in connection with 4 and 1.  However, Debtors neglect to explain that 4 and 1 was primarily formed to sell and license Axiom products.  As Debtors' own example in their Opposition shows, Axiom and 4 and 1 worked closely together to sell products to companies such as Sunwarrior.  Bransky was compensated through commissions and salary for any deal he brokered on behalf of Axiom, and through his 50% ownership of 4 and 1.  Decl. of David Janow ("Janow Decl."), ¶ 2, 3.  Debtors also bring up the issue of an alleged Operating Agreement that governs 4 and 1's management, an issue which has been previously raised before the California courts in the LA Action.  This alleged written Operating Agreement was never signed or agreed to by Janow.  Janow Decl., ¶ 4.

Throughout the Objection, Debtors routinely and consistently underplay and misrepresent Bransky's actual role at Axiom.  Based on Bransky's account, Bransky never even worked for Axiom, but instead simply brokered for Axiom through J.R. Williams.  However, Bransky's own Exhibit 2 to the Objection illustrates that Bransky was provided health insurance by Axiom, and that he was considered a "hire" and paid a salary.  Bransky conducted his business for Axiom through an "axiomfoods.com" e-mail address, and referred to himself as Axiom's "Vice President of Sales" in his e-mails and business cards, something which Bransky has never disputed in the LA Action or in his Objection.  Bauch Decl., ¶ 4, Exh. B.

---

[1] Axiom and Growing Naturals do not consent to the trial of any of these matters in the Bankruptcy Court.

Bransky also claims that "JR Williams brought Garden of Life as a customer to Axiom." This is completely untrue. While Bransky was tasked with managing Axiom's relationship to Garden of Life, Garden of Life was already a customer of Axiom before Bransky joined the company. Janow Decl., ¶ 5. In fact, most of the customers that Bransky would later attempt to steal away from Axiom were given to him to manage by Axiom, rather than customers he proactively acquired himself. Janow Decl., ¶ 6.

Debtors further claim that in 2012 and 2013, J.R. Williams began purchasing and selling pea protein in response to a worldwide shortage of the product. At no point do Debtors dispute that Bransky was aware that pea protein was a product that Axiom also purchased and sold, or that this was a product that Bransky regularly purchased and sold on behalf of Axiom. Instead, Debtors only claim that Bransky "did not acquire the product for Axiom to resell and was under no obligation do so." However, as the above facts show, Bransky clearly worked for Axiom in at least some capacity and, as an agent of the company, had fiduciary duties to it. Based on his role as an officer of both Growing Naturals and Axiom, Bransky owed a fiduciary duty to these entities and their members. *See, e.g., Small v. Fritz Companies, Inc.*, 30 Cal.4th 167, 179 (2003). One way that an officer can breach this duty is to violate the duty of loyalty by starting a competing business and usurping corporate opportunities for the benefit of his competing business. "It is settled that a director or officer of a corporation may not enter into a competing enterprise which cripples or injures the business of the corporation of which he is an officer or director." *Xum Speegle, Inc. v. Fields*, 216 Cal.App.2d 546, 554 (1963). If he does seize such opportunities in violation of his fiduciary duties, the company is entitled to all of the benefits wrongfully obtained. *Id*.

Even if Bransky is considered only an agent and not an officer, the law requires perfect good faith on the part of agents, not only in form, but in substance; the obligation of an agent to his principal demands of him the strictest integrity, good faith and the most faithful service. *Boulenger v. Morison*, 88 Cal.App. 664, 668 (1928) ("An agent cannot serve two master."). An agent is a fiduciary as a matter of law. *Brown v. Wells Fargo Bank, N.A.*, 168 Cal.App.4th 938, 960 (2008). This requires an agent to comply with the duty of loyalty and to "act loyally for the principal's

benefit in all matters connected with the agency relationship." *Huong Que, Inc. v. Luu*, 150 Cal.App.4th 400, 411 (2007). Further, "an employer is entitled to its employees' undivided loyalty." *Fowler v. Varian Associates, Inc.*, 196 Cal.App.3d 34 (1987); *see also Otsuka v. Polo Ralph Lauren Corp.*, 2007 WL 3342721 (N.D. Cal. 2007) (all employees owe a duty of loyalty to their employers).

Even were this not the case, Bransky's misconduct with regard to J.R. Williams' pea protein transactions extends beyond simply competing with, and stealing business from, the company he nominally worked for. Bransky hid the fact that he had begun operating a competing business from Axiom, and took deliberate and knowing steps to conceal the fact that he was doing so. Emails to colleagues and business associates included warnings that they should not send emails to his Axiom email address when discussing these competing business activities. Bauch Decl., ¶ 5, Exh. C.

Bransky also regularly forwarded and exported internal Axiom emails from his Axiom email account to his employee at J.R. Williams, Sam Kappel. These emails included customer lists, pricing data, and other key proprietary information. Bransky would forward Sam Kappel lists of potential pea protein customers prepared by Axiom, lists of industry contacts, and spreadsheets outlining "Axiom's whole pea picture." Bauch Decl., ¶ 6, 7, 8, Exh. D, E, F. At certain points, Bransky also forwarded Kappel future sales strategies and discussions amongst Axiom employees regarding securing further business. Bauch Decl., ¶ 9, Exh. G. Not only did Bransky steal this information for his own benefit, but he showed complete disregard for Axiom or other Axiom employees while doing so, laughing in his e-mails as he forwarded information which he intended to use for his own benefit. Bauch Decl., ¶ 6, Exh. D. Even if Bransky truly had the right to buy and sell pea protein in direct competition with Axiom, which he did not, he clearly did not have the right to steal and misuse Axiom information.

Debtors' Opposition also misleadingly claims that "JR Williams never purchased or sold rice protein [Axiom's largest product by far] to any other companies but JR Williams certainly had the right to do so." What Debtors neglect to explain is that Bransky spent nearly half a year, if not longer, <u>attempting</u> to do just that. Emails and evidence recovered from Bransky's Axiom supplied

1  computer show that starting in early 2014, Bransky began working closely with Hill Pharma Inc., a
2  New Jersey corporation, to try and secure a supplier of rice protein, which they would then use to
3  sell rice protein directly to some of Axiom's biggest customers, including Garden of Life, LLC.
4  Purchase orders, invoices, and shipping records further show that these plans were not merely
5  hypothetical, but actual transactions that took place. Bauch Decl., ¶ 10, 11, 12, Exh. H, I, J.
6  Bransky's defense to all these assertions has merely been unsubstantiated claims that none of these
7  transactions were ever successful. Bransky has never been able to produce even a single document
8  demonstrating that their shipments of rice protein to Garden of Life and other customers either
9  failed or were returned.
10  Debtors further seek to mislead the Court regarding his own emails, dismissing them as "a
11  few e-mails to friends in the industry boasting" and "some angry e-mails." However, the contents
12  of these e-mails, which Debtors conspicuously fail to acknowledge or address directly, speak for
13  themselves. For instance, in an email already quoted in the moving papers, Bransky specifically
14  urged Hill Pharma to sabotage Axiom's relationship with a supplier. Bauch Decl., ¶ 13, Exh. L. In
15  another email he gloats that he is about to "release wave two on axiom," which hardly sounds like
16  an idle threat given all of Bransky's actions against the company. Bauch Decl., ¶ 14, Exh. M. The
17  most clear example of Bransky's messages showing his actual malice towards Creditors is his
18  December 19, 2013 text message to Michele Mullen, in which he deliberately instructs her to
19  intervene in a prospective business deal. Mullen's response, requesting more information in order
20  to interfere with the transaction, hardly suggests that this was merely an "angry e-mail." Bauch
21  Decl., ¶ 15, Exh. N.
22  Nor are Creditors' claims against Bransky and J.R. Williams in the LA Action limited to
23  those for breach of fiduciary duty. Debtors knew of Creditors' contracts with suppliers and
24  customers, including those containing exclusivity provisions, and took affirmative steps to induce
25  those suppliers and customers to breach their agreements. Even as to those potential customers
26  who were not under contract, Debtors are still liable for interference with prospective economic
27  advantage, as they used a variety of improper means to disrupt Creditors' anticipated economic
28

relations. Furthermore, Debtors' dissemination of and misuse of Creditors' confidential and trade secret information constitutes both a violation of the Uniform Trade Secrets Act as well as the Operating Agreement of Growing Naturals to which Bransky is a party. Finally, all of these wrongful acts will also support a claim for unfair business practices in violation of Business and Professions Code § 17200 et seq.

Debtors also go to great lengths to paint a picture of Axiom attempting to force Bransky out of business and driving him into debt through frivolous litigation. As all of the above shows, the litigation is hardly meritless or frivolous, and is entirely based on <u>proven</u> misconduct by Bransky. But even beyond that, since declaring bankruptcy, Bransky's own monthly operating reports filed with this court show nothing but exorbitant spending that hardly befits someone "driven into debt."

Debtors' May 2015 operating report shows total expenses of $4,253.91. Bauch Decl., ¶ 16, Exh. O. In June, Debtors' total expenses more than quadrupled, coming out to $17,009.19. Bauch Decl., ¶ 17, Exh. P. While Debtors' May operating report only encompassed May 9 – May 31, rather than the entire month, the four fold increase in spending is never explained. Further, Debtors' June operating report includes a baffling $2,325.60 on groceries, $1,384.72 on dining out, and $3,135.42 for "personal expenses." These personal expenses include spending $197 at a casino on June 1, and purchasing show tickets for $370 on June 15. Debtors' exorbitant spending only continues in July 2015, for which he reported $14,035.36 in total expenses. Bauch Decl., ¶ 18, Exh. Q. July's expenses included $1,734.00 spent on entertainment, $1,210.96 on dining out, and $2,141.31 for "personal expenses." Debtors' expenses and credit card activity suggest that Debtors vacation through multiple states, including visiting and spending large amounts of money at numerous tourist destinations. All of the above hardly shows a man driven into debt and unable to continue litigating in the LA Action, but instead demonstrates Bransky's bad faith in filing for an unnecessary bankruptcy in order to escape the consequences of his misconduct.

## III. LEGAL ARGUMENT

As discussed in the opening papers, the *Curtis* factors applicable to this action generally weigh heavily in favor of granting the Motion.

### A. Whether the Relief Will Result in a Partial or Complete Resolution of the Issue

This factor weighs heavily in favor of relief. Debtors' Opposition attempts to deny it, but its argument is based entirely on Debtors' assertions that the Creditors' claims are "frivolous" and that the California Action "spiraled out of control." Notably, Debtors cite no authority for the proposition that a Bankruptcy Court should pre-judge a Creditor's claims in deciding whether or not to grant relief. Moreover, even if it were proper to do so, Debtors have offered no evidence other than their own provably false assertions in a brief, as apparently Mr. Bransky was unwilling to put his dubious claims under oath. The facts and law cited above and in the moving papers demonstrate that the claims are far from frivolous, and that in fact Debtors engaged in a textbook example of breach of fiduciary duty, among other wrongs.

As to the claim that the LA Action "spiraled out of control," principles of judicial comity dictate that this court should be reluctant to brand a state court as lacking control over its proceedings, and certainly should not do so without evidence. Here, Debtors offer none, and in fact have demonstrably lied to this Court about the California proceedings. Contrary to their claim in their Opposition, J.R. Williams did challenge the Los Angeles Court's personal jurisdiction over it in the Axiom/Growing Naturals case – and lost. Bauch Decl., ¶ 19, 2, Exh. R, A. After that defeat, J.R. Williams did not seek appellate review, and withdrew their challenge to jurisdiction in the 4 and 1 Nutrition matter. Bauch Decl., ¶ 20, Exh. S. Defendant Bransky never attempted to dispute personal jurisdiction in either action, electing to answer the Complaint rather than bring a motion to quash. Bauch Decl., ¶ 19, Exh. R.

Debtors' cries of "frivolous claims" and "out-of-control discovery" are just as disingenuous. In all of the time that the Axiom/Growing Naturals case was pending prior to their filing of a bankruptcy petition – over a year – neither Bransky nor J.R. Williams filed or served a motion for sanctions under California Code of Civil Procedure §128.7 (an analogue to Federal Rule of Civil Procedure 11, governing frivolous claims), or a demurrer to the Complaint (by which they could have raised the supposed "critical legal deficiencies" Opposition p. 2), or a motion for summary judgment. As to discovery, California's Discovery Act is patterned after the Federal Rules of Civil

Procedure, and specifically provides (among other remedies) for a court to enter protective orders on the motion of any party if "[t]he discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source. . . [or] is unduly burdensome or expensive. . . ." California Code of Civil Procedure §2019.030(a). Yet Bransky and J.R. Williams never even initiated the informal meet and confer process for such a motion, much less filed such a motion. See Bauch Decl., ¶ 3. Similarly, these defendants never brought a §128.7 motion, demurrer, motion for summary judgment, or motion for protective order in the 4 and 1 Nutrition matter. See Declaration of Stephen Raucher, submitted with 4 and 1 Nutrition's Reply.

Simply put, Debtors' claims of an "out of control" process in California are false, and provide no grounds for opposing the motion.

### B. The Lack of Any Connection with or Interference with the Bankruptcy Case

Debtors do not dispute – as they cannot – that the plaintiffs in the LA Action represent nearly all of the claims against the estate. Nor do Debtors offer any reason why the LA Action would interfere with this case, other than vague references to a supposed risk of conflicting rulings that Debtors never specify.

In fact, resolution of the LA Action will streamline proceedings before this Court by resolving, among other things, whether or not the claims at issue are "frivolous" as Debtors contend, or are substantial claims that must be properly addressed in a plan of reorganization.

### C. Whether a Specialized Tribunal Has Been Established to Hear the Particular Cause of Action and That Tribunal Has the Expertise to Hear Such Cases

Debtors' Opposition offers two responses on this factor, neither of which has any merit. The first is to claim that there is only one written document that matters in this entire case, the Growing Naturals Operating Agreement. It is curious, then, that Debtors never brought a motion for summary judgment in the LA Action to dispose of such a simple, one-document case. It is also curious that Debtors never brought a motion for protective order to limit all the supposedly unnecessary discovery, i.e. everything other than this one magic document. It is almost as if Debtors did not believe in the story they now ask this Court to accept.

In fact, contrary to Debtors' claims, the Los Angeles Court has already ruled upon a jurisdictional challenge by J.R. Williams, several pleading issues relating to Debtors' cross-complaints, entered a confidentiality order, and had pending before it prior to the automatic stay a discovery motion brought by Creditors to compel production of documents by Bransky.

### D. Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors, the Creditors' Committee, and Other Interested Parties, and The Interest of Judicial Economy and the Expeditious and Economical Determination of Litigation for the Parties

Debtors' only argument on this point is to regurgitate the "frivolous claims" mantra. Again, as noted above, the plaintiffs in the LA Action represent the vast majority the claims against each Debtor. The next largest unsecured creditor for both Debtors is Debtor's counsel in the LA Action.[2] Debtors admit that they "have traveled all over the world" to conduct their business, meaning there would be no particular hardship to them to continue to defend the LA Action.

### E. Whether the Foreign Proceedings have Progressed to the Point Where the Parties are Prepared for Trial

Debtors offer nothing but more misstatements and non sequiturs on this point. They claim that the Los Angeles Court has not "resolved the issue of whether Bransky was an employee of Axiom . . . and if so would he have been an Arizona employee since he lived here," but they fail to show that this is an issue that must be determined before trial. Certainly Debtors have not filed any motion that would require resolution of that issue. Similarly, they make no showing that "the determination of the application of Arizona Law as required by Growing Naturals" – whatever that means – is an issue that must be determined before trial. The "issue of the minimal contact affirmative defenses" is presumably a reference to Debtors' challenge to personal jurisdiction, which in fact the Court did decide as to J.R. Williams, and which Bransky waived. Lastly, Debtor's reference to the "Janow demurrer on Cross Motion regarding Janow's Breach of Fiduciary duty" is incoherent at best, if not another lie – Janow's demurrers to Debtors' cross-complaints in

---

[2] Another contradiction in Debtors' story is that according to them, nothing of consequence has happened in the California Action, yet Debtors' counsel in that action has substantial claims for unpaid bills.

1  both actions were ruled upon at an April 8, 2015 hearing, and Janow filed answers on April 28,
2  2015. Bauch Decl., ¶ 21, 22, Exh. T.

### F. The Impact of the Stay on the Parties and the Balance of Hurt

As noted above, Debtors have abused the stay to put a halt to discovery, to avoid testifying at deposition and revealing the full extent of their misconduct, including their use of confidential information belonging to Creditors, and despite all their talk of supposedly "abusive" discovery, Debtors do not cite a single example, much less demonstrate any effort to seek relief during the LA Action even though California law certainly allows for such remedies.

Meanwhile, Debtors are exploiting the bankruptcy stay to enjoy a decidedly comfortable lifestyle, including elaborate vacations, casino visits, concerts, and lavish meals.

### G. The Interest of Judicial Economy and the Expeditious and Economical Determination of Litigation for the Parties

Debtors' Opposition claims that "[t]his Factor from the *Curtis* Case was not addressed in Movant's Motion. . . ." Opposition, p. 10. In fact, Creditors did address these factors as part of point D, both above and in the moving papers.

### H. Debtors' "Good Faith Plan" Is No Such Thing

Lastly, Debtors rely on their plan of reorganization and how it will supposedly provide for the payment of 100% of the unsecured claims, "if the Movant's claims are found to be without merit which is anticipated or if they are resolved by the sale of the companies." Opposition, p. 11.

Again, Creditors' claims account for over 90% of the claims against the Debtors. A plan that works if you disregard over 90% of the claims is no plan at all, especially when the only "evidence" that those claims should be disregarded is unsubstantiated argument in Debtors' memorandum, and Debtors' mysterious failure to even seek, much less obtain, dismissal of these supposedly frivolous claims in a year of litigation. Nor is the hope of using Debtors' interest in Growing Naturals and 4 and 1 to pay off the claims more reasonable in light of the amount of the claims as compared to the value of those entities. In any event, those are issues that cannot be

resolved until the Creditors' claims are resolved, which has been Creditors' point all along: allowing relief from stay will facilitate the proposal and confirmation of a <u>realistic</u> plan.

## IV. **CONCLUSION**

For these reasons, and as set forth in the moving papers, the motion should be granted.

DATED: September 8, 2015.  POLSINELLI P.C.

  /s/ *Wesley D. Ray*
CARLYLE W. HALL III
WESLEY D. RAY
Attorneys for Creditors
Axiom Foods, Inc. and Growing Naturals, LLC

LAPIDUS & LAPIDUS
A PROFESSIONAL LAW CORPORATION

  /s/ *Ryan D. Lapidus*
RYAN D. LAPIDUS, *pro hac vice*
Attorneys for Creditors
Axiom Foods, Inc. and Growing Naturals, LLC

**COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*")
on September 8, 2015, to:

Christopher J. Pattock
* Christopher.J.Pattock@usdoj.gov
U.S. TRUSTEE'S OFFICE
230 N. 1st Avenue, Suite 204
Phoenix, AZ 85003

Dennis M. Breen, III * dennis@botlawfirm.com
BREEN OLSON & TRENTON, LLP
4720 N. Oracle Rd., Suite 100
Tucson, AZ 85705-1673
  *Attorneys for Debtors*

Nancy K. Swift * nswift@buchalter.com
BUCHALTER NEMER
16435 North Scottsdale Road, Suite 440
Scottsdale, AZ 85254-1754
 *Attorneys for Ford Motor Credit Company LLC*

Robert M. Charles * RCharles@LRRLaw.com
LEWIS ROCA ROTHGERBER LLP
One South Church, Suite 700
Tucson, AZ 85701-1611
 *Attorneys for 4 & 1 Nutrition, LLC*

| | |
|---|---|
| 1 | Michael W. Chen  *<br>bknotice@mccarthyholthus.com<br>MCCARTHY HOLTHUS, LLP |
| 2 | 9510 West Sahara Avenue, Suite 110<br>Las Vegas, NV 89117 |
| 3 | *Attorneys for Wells Fargo Bank, N.A.* |
| 4 | |
| 5 | By:  */s/ Mary Engel* |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |